IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff-Respondent,<br><br>v.<br><br>FILIBERTO AVALOS,<br><br>Defendant-Petitioner. | Case No. 13-20026-JAR-01 |

# MEMORANDUM AND ORDER

This matter is before the Court on Petitioner Filiberto Avalos's *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Doc. 59).  Also before the Court is Petitioner's Motion to Supplement Pursuant to Fed. R. Crim. [sic] P. 15(d) (Doc. 66) to add an additional claim under *Rehaif v. United States*.[1]  For the reasons explained below, the Court construes Petitioner's motion to supplement as a motion to amend under Fed. R. Civ. P. 15, and denies the motion as futile; the Court also summarily dismisses Petitioner's § 2255 motion without an evidentiary hearing.

## I.     Background

On March 15, 2013, Petitioner was charged in a twenty-six-count Indictment with multiple firearms and drug trafficking offenses.[2]  On December 17, 2014, Petitioner pleaded guilty to two counts of felon in possession of firearms in violation of 18 U.S.C. § 922(g)(1) and

---

[1] 139 S. Ct. 2191 (2019).

[2] Doc. 1.

1

§ 924(a)(2) (Counts 16 and 25); and two counts of distribution of five grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii) (Counts 17 and 26).[3] In the Plea Agreement, Petitioner admitted that: he had previously been convicted of a felony offense in California; that as a result of this conviction, it was unlawful for him to own or possess a firearm or ammunition; that he knowingly sold firearms to undercover law enforcement officers; and that a factual basis existed for each element of the crimes as charged.[4] On June 30, 2015, Judge Carlos Murguia sentenced Petitioner to a total term of 175 months' imprisonment, consisting of 120 months on the firearms counts and 175 months on the drug trafficking counts, to be served concurrently with each other and with the sentence imposed in the Eastern District of Missouri, followed by a four-year term of supervised release.[5] Petitioner did not appeal the conviction or sentence.

Petitioner was represented in his underlying criminal proceedings by Assistant Federal Public Defender Kirk Redmond. After Redmond was permitted to withdraw on January 27, 2014, the court appointed Gary Stone to represent Petitioner.[6] Stone was also permitted to withdraw, and on May 20, 2015, the court appointed David Kelly to represent Petitioner.[7] On July 17, 2018, Standing Order 18-3 appointed the Federal Public Defender ("FPD") to represent any defendant from the District of Kansas who may have a post-conviction Sixth Amendment claim based on the recording of in-person attorney-client meetings or attorney-client phone calls by any holding facility housing federal detainees within this District.

---

[3] Docs. 39, 40.

[4] Doc. 40 at 2–3.

[5] Doc. 50.

[6] Docs. 28, 29.

[7] Docs. 46, 47.

On August 13, 2019, this Court issued its ruling in *United States v. Carter* ("*Black* Order") that precipitates the § 2255 motion before the Court.[8]  The *Black* Order discussed the elements required to prove a per se violation of the Sixth Amendment under the Tenth Circuit decision in *Shillinger v. Haworth*,[9] which held that a per se Sixth Amendment violation occurs when: (1) there is a protected attorney-client communication; (2) the government purposefully intruded into the attorney-client relationship; (3) the government becomes "privy to" the attorney-client communication because of its intrusion; and (4) the intrusion was not justified by any legitimate law enforcement interest.[10]  Once those elements are established, prejudice is presumed.[11]

Petitioner seeks habeas relief based on events that came to light in the *Black* case and investigation as detailed in the *Black* Order, including audio and video recordings of conversations and meetings between attorneys and their clients who were detained at CCA.  On June 19, 2019, Petitioner filed a *pro se* § 2255 motion, speculating that the government violated the Sixth Amendment when it allegedly accessed video recordings of his meeting(s) and audio recordings of his calls with counsel while he was detained at CCA between 2013 and 2015.  The government admits that it obtained videos from CCA in connection with the *Black* case, which focused on drug and contraband trafficking inside CCA.

On April 12, 2016, the government served a subpoena on CCA seeking "[a]ll video footage or still images currently retained by [CCA] depicting any internal or external

---

[8] No. 16-20032-JAR, Doc. 758 (D. Kan. Aug. 13. 2019).  As discussed in that Order, the Sixth Amendment claims stem from recordings of conversations and meetings with counsel while they were detained at Corrections Corporation of America ("CCA").  That facility has since been renamed CoreCivic.  For convenience, the Court refers to it as CCA in this Order.

[9] 70 F.3d 1132 (10th Cir. 1995).

[10] *Black* Order at 162 (citing *Shillinger*, 70 F.3d at 1142).

[11] *Id.*

surveillance video or still image taken between July 2014 and April 12, 2016 at the CCA facility in Leavenworth, Kansas."[12]  On May 17, 2016, CCA provided six DVR hard drives to the government containing surveillance footage from inside and outside of the facility, including in rooms used for inmate-attorney meetings.[13]  The defense also discovered that the government had routinely obtained CCA recorded attorney-client phone calls, and that it did so without notice to the attorneys, clients, or courts.[14]  Once notified of the recordings, on August 16, 2016, this Court ordered the video and audio recordings in the government's custody to be impounded.[15]

In the *Black* Order, the Court determined that the following threshold showings must be made for a defendant raising such claims in a § 2255 motion after review and verification by the FPD.  With respect to audio recordings, a petitioner must show: (1) the telephone recording exists; (2) a given call contains protected attorney-client communication, i.e., communication that relates to legal advice or strategy sought by the client; and (3) an affidavit from defense counsel confirming that the nature and purpose of the call(s) were within the ambit of protected communication, including but not limited to defense preparation, plea negotiations, or review of discovery.[16]  With respect to video recordings, a petitioner must show: (1) the video of the attorney-client meeting exists; (2) the quality of the non-verbal communication in the video is sufficient to confirm communication between the detainee and counsel; and (3) an affidavit from defense counsel confirming that the nature of the meeting related to legal advice or strategy,

---

[12] *Id.* at 66.

[13] *Id.* at 66–67.

[14] *Id.* at 29.

[15] *Id.* at 10, 66.

[16] *Id.* at 166.

4

including but not limited to defense preparation, plea negotiations, or review of discovery.[17]  It was the Court's intent that this threshold showing would assist in eliminating claims where it was clear that no protected communication existed, for example, where there was no recording at all, the recording was not audible or visible, or the purpose of the conversation was not to seek legal advice or strategy.

The video recordings from CCA, impounded by the Court since August 2016, were turned over to the FPD after the *Black* Order was entered on August 13, 2019.  Per the parties' agreement, as part of the *Black* investigation, the government also began surrendering recordings and derivative evidence of audio calls from CCA that were in its possession.[18]  The FPD, along with defense counsel, proceeded to exhaustively review hundreds of hours of audio and video recordings, ultimately filing over 100 habeas motions alleging Sixth Amendment violations with respect to the government's alleged intentional-intrusion into these detainees' attorney-client conversations and meetings.  The FPD did not enter an appearance on behalf of Petitioner or supplement his *pro se* motion.  On February 21, 2020, Petitioner's case was transferred to the undersigned for all further proceedings.[19]

**II.     Discussion**

Although captioned as a request to supplement, Petitioner seeks to add a discrete claim to his § 2255 motion, which the Court construes as a motion for leave to amend under Fed. R. Civ. P. 15.  The Court addresses Petitioner's motion for leave to amend before reaching the merits of his § 2255 motion.

---

[17] *Id.* at 165–66.

[18] *Black*, No. 16-20032-JAR, Doc. 705 (D. Kan. Dec. 12, 2018).

[19] Doc. 68.

A. **Motion for Leave to Amend**

Petitioner seeks to add a claim challenging the validity of his conviction based on a recent decision of the United States Supreme Court in *Rehaif v. United States*, which held that to convict a criminal defendant under 18 U.S.C. § 922(g), the government must prove "both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing firearms."[20]  Before *Rehaif*, the government could obtain a felon-in-possession conviction without proving that the defendant knew he had previously been convicted of a felony.[21]

It is well-settled that in ruling on a motion for leave to amend under Fed. R. Civ. P. 15, courts are instructed to "freely give leave when justice so requires," and to deny leave to amend only when an apparent reason, "such as . . . futility of amendment," exists.[22]  Thus, "a court properly may deny a motion for leave to amend as futile when the proposed amended complaint would be subject to dismissal for any reason."[23]

Petitioner's *Rehaif* claim is futile.  First, in his criminal case, Petitioner pled guilty to Count 16 of the Indictment, which states:

> On or about November 2, 2011, in the District of Kansas, the defendant, Filiberto Avalos, . . . who had been convicted in 2004, case number BA262140, for Carrying a Loaded Firearm, in the Central District Trial Court of Los Angeles County, California, a crime punishable under the laws of California by imprisonment for a term exceeding one year, knowingly and unlawfully shipped and transported in interstate and foreign commerce, possessed in and affecting interstate and foreign commerce, and received firearms, namely, a .45 caliber EAA pistol, . . . and a .38 caliber F.I.E. pistol, . . . which had been shipped and transported

---

[20] 139 S. Ct. 2191, 2195–2200 (2019).

[21] *See, e.g., United States v. Silva*, 889 F.3d 704, 711 (10th Cir. 2018).

[22] Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178 (1962); *Cohen v. Longshore*, 621 F.3d 1311, 1313 (10th Cir. 2010).

[23] *Bradshaw v. Lappin*, 484 F. App'x 217, 225 (10th Cir. 2012) (citation omitted).

in interstate and/or foreign commerce, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2).[24]

Petitioner also pleade guilty to Count 25, which alleged the same crime occurred on May 15, 2012, with respect to four additional firearms.[25] In the factual basis for the Plea Agreement, Petitioner admitted that he had been convicted of a felony in California and as a result of this conviction, it was unlawful for him to own or possess a firearm or ammunition.[26] At the plea hearing, Petitioner made an allocution on the elements of the crime and agreed that he had a prior felony conviction that would have prohibited him from possessing firearms.[27] *Rehaif*'s § 924(a)(2)'s scienter requirement was therefore satisfied in this case, and his claim is futile.[28]

Even if not it were not satisfied, *Rehaif* cannot form the basis for § 2255 relief because courts have uniformly held that *Rehaif* is not retroactively applicable on collateral review. This Court recently held that, while the Supreme Court and the Tenth Circuit Court of Appeals have not squarely addressed whether *Rehaif* retroactively applies to cases on collateral review, non-retroactivity is "the uniform view of . . . courts of appeals that have addressed this question."[29] Specifically, the Second Circuit held that "[t]he Supreme Court's decision in *Rehaif* involved only a question of statutory interpretation and thus did not announce a new rule of constitutional

---

[24] Doc. 1 at 8–9.

[25] *Id.* at 12–13.

[26] Doc. 40 at 3.

[27] Doc. 62 at 24–26.

[28] *See United States v. Benton*, 988 F.3d 1231, 1239–43 (10th Cir. 2021) (joining sibling circuits' interpretation of *Rehaif* in holding that, in a prosecution under §§ 922(g) and 924(a)(2), the scienter requirement extends only to the defendant's knowledge that he possessed a firearm and had the relevant status under § 922(g) at the time of his possession, and rejecting requirement that defendant knew he was prohibited from possessing firearms under federal law as a result of his prohibited status as imposing what amounts to a willfulness requirement) (collecting cases).

[29] *See United States v. Ingram*, No. 14-20069-JAR-02, 2020 WL 6078151, at *2 n.9 (D. Kan. Oct. 15, 2020) (collecting cases).

law within the meaning of 28 U.S.C. § 2255[ ]."[30] Petitioner's amended claim would be subject to dismissal and is thus futile. Accordingly, the Court denies Petitioner leave to amend his § 2255 motion.

## B. Sixth Amendment Claim

Section 2255 entitles a federal prisoner to relief if the court determines that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or [is] otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack."[31] The court must hold an evidentiary hearing on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."[32] A § 2255 petitioner must allege facts that, if proven, would warrant relief from his conviction or sentence.[33] An evidentiary hearing is not necessary where the factual allegations are contradicted by the record, are inherently incredible, or when they are conclusion rather than statements of fact.[34]

Petitioner states in his motion that he was detained at CCA from 2013 until 2015, and that while he was there, he met with his attorney in the visitation rooms several times. Petitioner also states that he made phone calls to counsel while he was detained at CCA. As previously discussed, after review of the recordings turned over by the government, the FPD did not enter

---

[30] *Mata v. United States*, 969 F.3d 91, 94 (2d Cir. 2020).

[31] 28 U.S.C. § 2255(b).

[32] *United States v. Galloway*, 56 F.3d 1239, 1240 n.1 (10th Cir. 1995) (quoting 28 U.S.C. § 2255(b)).

[33] *In re Lindsey*, 582 F.3d 1173, 1175 (10th Cir. 2009).

[34] *See Hatch v. Oklahoma*, 58 F.3d 1447, 1471 (10th Cir. 1995) ("[T]he allegations must be specific and particularized, not general or conclusory."); *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (rejecting ineffective assistance of counsel claims that are merely conclusory in nature and without supporting factual averments).

an appearance on behalf of Petitioner or supplement his *pro se* motion, nor is there any evidence that a recording of any conversation or meeting with counsel exists or meets the threshold criteria for a protected communication established by the Court in the *Black* Order.  The Court has also reviewed the status reports submitted by the government cataloguing the recordings of attorney-client phone calls from CCA per the list of inmates compiled by the FPD, and Petitioner is not listed as having any such recordings.[35]  There is simply no evidence in the record beyond Petitioner's speculation to support his allegations that the government intentionally intruded upon his attorney-client communications by becoming privy to recordings of his conversations and meetings with counsel.  Accordingly, the Court summarily dismisses Petitioner's § 2255 motion as lacking any factual basis that would warrant relief from his conviction or sentence.

## III.    Certificate of Appealability

Rule 11 of the Rules Governing Section 2255 Proceedings states that the Court must issue or deny a certificate of appealability ["COA"] when it enters a final order adverse to the applicant.  "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."[36]  If the district court denies a habeas petition on procedural grounds without reaching the merits of petitioner's underlying constitutional claim, "the prisoner must show both (1) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling' and (2) 'that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right.'"[37]  For the reasons stated above, the Court finds that Petitioner has not

---

[35] *See Black*, No. 16-20032-JAR, Docs. 764, 787, 799, 806, 846, 848.

[36] 28 U.S.C. § 2253(c)(2).

[37] *United States v. Park*, 727 F. App'x 526, 528 (10th Cir. 2018) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

satisfied this standard and, therefore, denies a certificate of appealability as to its ruling denying leave to amend his motion as well as on the merits of his § 2255 motion.

**IT IS THEREFORE ORDERED BY THE COURT** that Petitioner Filiberto Avalos's Motion to Amend (Doc. 66) to add a claim under *Rehaif* is **denied** as futile;

**IT IS FURTHER ORDERED** that Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 59) is **dismissed** without an evidentiary hearing; Petitioner is also denied a certificate of appealability.

**IT IS SO ORDERED.**

Dated: April 15, 2021

 S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE